IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM MAXWELL BEEH,

Plaintiff,

v.

SCB GLOBAL LTD, a foreign business
Corporation, SCB GLOBAL LTD LLC, a
foreign limited liability company, SAIF
AHMED, an individual, MUSLEH
RAHMAN, an individual, and MOHAMMED
SHAMS KHAN, an individual,

Defendants.

Case No. 3:26-cv-00447-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Defendants SCB Global Ltd ("SCB Global"), SCB Global Ltd LLC ("the LLC"), Saif

Ahmed, Musleh Rahman, and Mohammed Shams Khan move to dismiss plaintiff William

Page 1 – OPINION AND ORDER

Maxwell Beeh's amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). This Court has full consent from all parties. For the reasons stated below, defendants' motion is granted in part and denied in part.

## DISCUSSION

### I.    Background

SCB Global is an English private limited company in telecommunications and cloud communications with a particular focus on Microsoft Teams. First Ahmed Decl. ¶ 3 (doc. 5). It has a principal place of business in London, England. *Id.* The LLC is a Nevada limited liability company with a principal place of business in Arizona. *Id.* ¶ 4. SCB Global is a member of the LLC. *Id.* Ahmed, Rahman, and Khan are all residents and citizens of the United Kingdom. *Id.* ¶ 5. Ahmed is SCB Global's CEO, Rahman is SCB Global's head of finance, and Khan is SCB Global's vice president. Am. Compl. ¶¶ 4-6 (doc. 1-2).

Plaintiff, a Bend resident, worked for the corporate defendants first as an independent contractor through his company PartnerIQ, LLC dba WaveBridge Partnering, LLC ("WaveBridge") from September to December 2024. From December 2024 until July 2025 plaintiff acted as the corporate defendants' chief revenue officer. *Id.* ¶¶ 1, 8-9, 17 (doc. 1-2); First Scope of Work, 5 (doc. 5-1); Beeh Decl. ¶¶ 3-4 (doc. 10-1). Prior to plaintiff performing any work for the corporate defendants, he and his business partner explained to Khan that they had a coworking space in Washington that they did not use, which Khan expressed interest in based on its proximity to Microsoft and because Oregon "is home to many of the corporate defendants' potential customers and strategic partners." Beeh Decl. ¶ 3 (doc. 10-1). PartnerIQ and the corporate defendants signed a scope of work agreement in September 2024, which was governed by Washington law. First Scope of Work, 4 (doc. 5-1). In November 2024, WaveBridge and the

Page 2 – OPINION AND ORDER

corporate defendants signed a more extensive scope of work agreement governed by Oregon law. Second Scope of Work, 4 (doc. 10-1). The invoices WaveBridge sent the corporate defendants for work performed under the second scope of work agreement listed an Oregon address. Beeh Decl. ¶ 6 & Ex. 2 (doc. 10-1).

Before the corporate defendants hired plaintiff, plaintiff spoke repeatedly with Ahmed, Rahman, and Khan about his Oregon home, sharing photos at least once, and Khan and Ahmed emphasized that plaintiff's proximity to Microsoft was "highly appealing to them." Beeh Decl. ¶ 7 (doc. 10-1). When plaintiff became chief revenue officer, he accepted the terms of an offer letter ("the Offer Letter") from the corporate defendants, under which plaintiff would receive a base salary plus a commission calculated and paid each quarter, the parties would provide each other 90 days' notice of termination of employment, and plaintiff would not work with or commercially associate with the corporate defendants' competitors for one year. Am. Compl. ¶¶ 10-12 (doc. 1-2); Offer Letter (doc. 5-2).

Defendants assert that during plaintiff's service either as a contractor or employee, he "was never asked or required to reside in Oregon, perform work in Oregon, or pursue business opportunities in Oregon." First Ahmed Decl. ¶ 10 (doc. 5). However, plaintiff states during his employment he worked from his Oregon home and engaged with Microsoft employees who lived and worked in Oregon at the corporate defendants' request. Beeh Decl. ¶ 8 (doc. 10-1). Khan, Ahmed, and Rahman contacted him at least weekly to carry out their jobs and his employers' "goals in Oregon and the Americas as a whole." *Id.* The corporate defendants also requested that plaintiff and a sales representative he worked with attend a conference defendants' sponsored in Portland, Oregon on its behalf; routinely approved plaintiff's work travel in and out of the airport in Redmond, Oregon; issued his pay to an Oregon bank account; and withheld Oregon taxes from

Page 3 – OPINION AND ORDER

his paychecks. *Id.* ¶¶ 9-11. During that time, plaintiff's regular email communications with the corporate defendants' personnel included his email signature indicating he was located in Bend, Oregon. *Id.* ¶ 13. Plaintiff "traveled to at least 26 destinations" in his role as chief revenue officer, including two countries outside of the United States and cities around the country. Second Ahmed Decl. ¶¶ 3-5 (doc. 16).

On July 7, 2025, plaintiff emailed his resignation to Ahmed and, per the Agreement, agreed to work an additional 90 days or until October 7, 2025. Am. Compl. ¶ 13 (doc. 1-2). On July 24, plaintiff requested payment of his first and second quarter commissions from Rahman but was told he would "get paid when we get paid." *Id.* ¶¶ 14-15. During a July 25 call, Ahmed reassigned plaintiff to work an account as an independent contractor and consultant rather than in his employee capacity, explaining that he "did not want to pay [plaintiff] commissions." *Id.* ¶ 16. On July 29, Khan notified plaintiff that Ahmed had terminated him effective July 28. *Id.* ¶ 17. On July 31, the corporate defendants notified plaintiff his access to company IT systems was disabled and accused him of working for SCB Global competitors during his employment. *Id.* ¶ 19. On July 29, 2025, and November 2, 2025, plaintiff demanded his unpaid wages. *Id.* ¶¶ 22-23. The corporate defendants refused to pay plaintiff his commissions or other payments owed. The corporate defendants also demanded plaintiff repay it for work he performed as a contractor and refused to pay him until he confirmed he was not violating the noncompetition provision of the Agreement. *Id.* ¶¶ 20-21.

On December 5, 2025, plaintiff initiated this action in Multnomah County Circuit Court. Defendants removed plaintiff's claims to this Court based on diversity jurisdiction. Notice of Removal 2-4 (doc. 1).

Page 4 – OPINION AND ORDER

## II.   Standards

### A.   Rule 12(b)(2)

Pursuant to Fed. R. Civ. P. 12(b)(2), dismissal is appropriate when the court lacks personal jurisdiction over the defendant. The plaintiff bears the burden of establishing that personal jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Federal courts ordinarily follow the state law of the forum to determine the bounds of personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Under Oregon's long-arm statute, personal jurisdiction is authorized to the full extent permitted by the United States Constitution. *Id.* (citation omitted). The Due Process Clause of the Fourteenth Amendment, in turn, requires nonresident defendants to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotations omitted).

The plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where the motion is based on written materials rather than an evidentiary hearing, the court focuses on the plaintiff's pleadings and affidavits. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127-28 (9th Cir. 1995). While the plaintiff cannot rest solely on the bare allegations of the complaint, uncontroverted factual allegations must be accepted as true. *Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

### B.   Rule 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the claims. To

survive a motion to dismiss, the complaint must state 'enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a party brings a motion to dismiss, the court will liberally construe the complaint in favor of the plaintiff and take its allegations as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that are a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). To state a plausible claim to relief, the plaintiff must allege facts in the complaint that "contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2008).

### III.    Personal Jurisdiction

Two forms of personal jurisdiction are available for application to a nonresident defendant: general jurisdiction and specific jurisdiction. Here, plaintiff asserts only specific jurisdiction. The Ninth Circuit has established a three-prong test for analyzing whether specific jurisdiction is appropriate: (1) a defendant must "purposefully direct his activities" or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum [state];" (2) the plaintiff's claim must be "one which arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of personal jurisdiction over the defendant must "comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.

The plaintiff "bears the burden of satisfying the first two prongs of the test." *Id.* In the event the plaintiff fails to satisfy either of the first two prongs, personal jurisdiction does not exist in the forum state. *Id.* If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable. *Id.*

Defendants contend their only contact with Oregon is plaintiff's unilateral decision to live in Oregon and that plaintiff's contacts with Oregon, the corporate defendants' interest in Microsoft, and plaintiff experiencing his alleged injuries in Oregon are insufficient for this Court to exercise jurisdiction over a United Kingdom company, three of its personnel, and its subsidiary. Defs.' Reply 1 (doc. 14).

### A.    Purposeful Availment or Direction

The first prong of the minimum contacts test contains two distinct concepts: purposeful direction and purposeful availment. *Id.* Purposeful direction analyses are more common for suits sounding in tort, while purposeful availment analyses are more common for suits sounding in contracts. *Id.* However, there is no "rigid dividing line between" the two analyses. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). "Rather, when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Id.* Here, plaintiff's claims arise from his contractual relationship with the corporate defendants, so the purposeful availment analysis applies.[1]

---

[1] Defendants assert in their reply that purposeful direction is the appropriate analysis for the individual defendants because the claim against them sounds in tort. Defs.' Reply 10-11 (doc. 14). Purposeful direction typically applies when a claim sounds in tort. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) ("Where, as here, a case sounds in tort, [courts] employ the purposeful direction test . . . derive[d] from *Calder v. Jones*, 465 U.S. 783 (1984).") However, "[t]he requirement is but a test for determining the more fundamental issue of whether a 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Haisten v. Grass Valley Med. Reimburs. Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986) (quoting *World-Wide Volkswagon*, 444 U.S. at 297). Further, "[c]orporate officers can be liable for corporate actions where they are the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *In re Boon Global Ltd.*, 923

Page 7 – OPINION AND ORDER

Purposeful availment focuses on whether "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). To be subject to specific jurisdiction, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State[.]" *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The contacts must be of the defendant's own volition and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). The contacts must also demonstrate that the defendant deliberately "reached out beyond" its home, for example, by entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotations and alterations omitted).

Plaintiff alleges that defendants knew he was an Oregon resident when he was hired, and they were attracted to his Oregon location for its proximity to Microsoft as well as its access to Oregon-based potential partners and customers. Beeh Decl. ¶¶ 3, 7 (doc. 10-1). Prior to his employment, he spoke often with each of the individual defendants about his home in Oregon. *Id.* ¶ 3. During his employment, each of the individual defendants contacted plaintiff in Oregon regularly to carry out their shared business goals. *Id.* ¶ 3 The corporate defendants sponsored a conference in Portland, Oregon and requested plaintiff attend on their behalf, routinely approved his travel in and out of Oregon, and issued his pay to an Oregon bank account after withholding Oregon taxes. *Id.* ¶¶ 9-11. Plaintiff also engaged with Microsoft employees who lived and worked in Oregon at SCB Global's request. *Id.* ¶ 8. After plaintiff submitted his resignation, the individual defendants, continuing in their alleged regular contact and management of the contractual

---

F.3d 643, 651 (9th Cir. 2019) (internal citations and quotations omitted). Because the claim against the individual defendants arises from the same contractual relationship that underlies the claim against the corporate defendants, purposeful availment is most useful.

Page 8 – OPINION AND ORDER

relationship, refused to pay plaintiff his commissions, reassigned him to work as a contractor to avoid paying him, and terminated him. Am. Compl. ¶¶ 14-17 (doc. 1-2).

In similar circumstances, the Ninth Circuit recently held that specific jurisdiction existed regarding a remote employer. *See Cohen v. Infinite Grp., Inc.*, 2025 WL 1554928, *2 (9th Cir. June 2, 2025) (the "defendant's knowing effort to reach out beyond its home state to create" a continuing employment relationship, which "contemplated that [the defendant] would regularly direct the activities [the plaintiff] would undertake in Oregon in service of the company and . . . would deposit money in [the plaintiff's Oregon] bank account," indicated purposeful availment) (citations and internal quotations and brackets omitted); *see also Perry v. Nat'l Ass'n of Home Builders of U.S.*, 2020 WL 5759766, *4 (D. Md. Sept. 28, 2020) (in the context of remote work, an employer purposefully avails itself to a forum by "intentionally direct[ing] contact with the forum state, such as through some combination of affirmatively recruiting the employee while a resident of the forum state, contracting to have the employee work from the forum state, having the employee attend meetings with business prospects within the forum state, and supplying the employee with equipment to do work there"). The Court finds this precedent persuasive and adopts *Cohen*'s reasoning. The first prong is satisfied.

### B.    Arises Out of Forum Activities

Plaintiff's claims also "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 529 U.S. 351, 359 (2021) (citation and internal quotation omitted). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017) (citation and internal quotations and brackets omitted).

Page 9 – OPINION AND ORDER

Here, plaintiff's claims arise directly from his contract-based employment arrangement with defendants. These claims would not exist without defendants' intentional contacts with Oregon. Accordingly, the second prong is met.

## C.    Reasonableness

Finally, the burden shifts to the defendant to show that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. The Court must consider the following factors to determine the reasonableness of Oregon's exercise of jurisdiction:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quotation and citation omitted). No one factor is dispositive. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Defendants argue "[i]t would be neither reasonable, respectful of the burdens on the foreign defendants, nor in the interests of judicial economy to hale [an] English [defendant] into an American court on the basis of [plaintiff's] unilateral forum contacts when the dispute could be better addressed in the Courts of England." Defs.' Mot Dismiss 12 (doc. 4). Defendants further contend "there is no reason that Oregon law must be applied to resolve" the claims, regardless of the forum, and that England has "an interest in enforcing a contract between its resident and a foreign plaintiff." Defs.' Reply 14 (doc. 14). Defendants' argument is cursory—for instance, defendants do not explain why Oregon law would not apply to plaintiff's claims for failure to pay wages or pay inquiry retaliation under Oregon statutes or what England's interest is in enforcing the contract— they fail to carry their burden.

Page 10 – OPINION AND ORDER

Nevertheless, the Court has reviewed the factors outlined in *Harris Rutsky* and finds the exercise of specific jurisdiction to be reasonable.

### i.    Extent of Purposeful Interjection

Defendants' interjection into Oregon weighs strongly in favor of jurisdiction. Defendants knew plaintiff lived in Oregon when they hired him for the purpose of expanding their business in Oregon and across the country. Beeh Decl. ¶¶ 3, 7 (doc. 10-1). They communicated with him regularly in furtherance of their shared work objectives, paid him in Oregon, sent him to represent SCB Global at a conference they sponsored in Oregon, and requested he meet with Microsoft employees who lived and worked in Oregon. *Id.* ¶¶ 8-9, 11.

### ii.    Burden on Defendants

The defendants' burden weighs somewhat against jurisdiction. Requiring defendants to litigate in Oregon may be somewhat burdensome since SCB Global is an English company and the individual defendants reside in the United Kingdom. First Ahmed Decl. ¶¶ 3, 5 (doc. 5). It is less burdensome to the LLC, which is based in Nevada and Arizona. *Id.* ¶ 4. However, "unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth,* 942 F.2d at 623 (citation and internal quotations and brackets omitted). Further, "modern advances in communications and transportation have significantly reduced the burden of litigation in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

### iii.    Extent of Conflict with Sovereignty of Foreign State

Similarly, conflict with the United Kingdom's sovereignty weighs against jurisdiction. "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Id.* (citations omitted).

Page 11 – OPINION AND ORDER

However, this factor is not controlling. *Harris Rutsky*, 328 F.3d at 1133. Here, defendants have presented no argument as to the United Kingdom's interest in adjudicating this lawsuit involving a contract with an Oregon resident and Oregon employment law, but SCB Global is an English entity and the individual defendants are residents of the United Kingdom, so the Court will not presume it has no interest.

### iv.    Forum State's Interest in Adjudication

Oregon's interest in adjudicating this dispute weighs heavily in favor of jurisdiction because Oregon has an interest in enforcing its employment laws and offering a venue for its residents to seek recourse for a breach of contract. *See Moore v. Gulf Atl. Packaging Corp.*, 2016 WL 8231142, at *18 (D. Or. Nov. 29, 2016) ("Oregon has a clear interest in vindicating the contractual rights of its citizens.").

### v.    Most Efficient Judicial Resolution

This factor weighs slightly against jurisdiction because only plaintiff resides in Oregon while the individual defendants reside in the United Kingdom. However, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky*, 328 F.3d at 1133 (internal citations and quotations omitted).

### vi.    Convenience and Effectiveness of Relief for Plaintiff

This factor weighs in favor of jurisdiction, as, if Oregon is not a proper forum plaintiff would likely be required to litigate in the United Kingdom, where courts would have little, if any, familiarity with Oregon law. However, "the plaintiff's convenience is not of paramount importance." *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002) (citation omitted).

Page 12 – OPINION AND ORDER

####    vii.    Availability of an Alternative Forum

The availability of an alternative forum is relevant "only where the forum state is shown to be unreasonable." *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987).

Defendants availed themselves of Oregon, and plaintiff's claims arise from defendants' forum-related activities. Therefore, the Court finds the exercise of specific jurisdiction reasonable. Defendants' motion is denied as to specific personal jurisdiction.

## IV.    Failure to State a Claim

Defendants argue that plaintiff's claims against the LLC "rely[] only on impermissible group pleading." Defs.' Mot. Dismiss 13 (doc. 4). Plaintiff argues SCB Global and the LLC "are corporate entities in a direct relationship with one another. Pl.'s Response 18 (doc. 10). Plaintiff explains that the consulting agreements referred only to "SCB Global" while his Offer Letter referred to "SCB Global Ltd[,]" and "it was unclear to [plaintiff] which entity was the proper defendant[.]"[2] *Id.* As a result, plaintiff "filed suit against both alleging well-pleaded allegations that each entity collectively employed [plaintiff]." *Id.* Plaintiff also offered to dismiss the other corporate defendant if defendants stipulate regarding which entity employed plaintiff. *Id.* Defendants declined to stipulate, contending "[p]laintiff improperly attempts to shift the burden of identifying his employer to [defendants] . . . [b]ut that is not how it works." Defs.' Reply (doc. 14).

Defendants' motion for failure to state a claim as to the LLC is conditionally denied with the expectation that the parties will confer regarding the correct defendant and the understanding

---

[2] Notably, both scope of work agreements list SCB Global's London address, while the Offer Letter refers to an Arizona address. First Scope of Work, 1 (doc. 5-1); Second Scope of Work, 1 (doc. 10-1); Offer Letter (doc. 5-2). Additionally, defendants state that plaintiff contracted with and was employed by SCB Global but do not affirm that he was not employed through the LLC. First Ahmed Decl. ¶ 9 (doc. 5). In any event, the Court does not consider matters outside the pleadings on a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

that plaintiff will dismiss his claims against one of the corporate defendants if defendant stipulates which entity employed plaintiff.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. 4) is denied as to Rule 12(b)(2) and conditionally denied as to Rule 12(b)(6).

IT IS SO ORDERED.

DATED this 26th day of May, 2026.


                                          _____/s/ Jolie A. Russo_____
                                                Jolie A. Russo
                                    United States Magistrate Judge